UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

T2 SOLUTIONS, INC.,

                         Plaintiff,

        v.                                    DECISION AND ORDER
                                                     04-CV-170A

ALLEN DATAGRAPH SYSTEMS, INC.,

                         Defendant.

---

## **INTRODUCTION**

Plaintiff, T2 Solutions, Inc. ("T2"), brought this action against defendant Allen Datagraph Systems, Inc., ("ADS") alleging violations of three separate agreements: (1) a supply agreement between the parties signed in 2002 ("Supply Agreement") (first claim); (2) a Digital Label Finishing System Agreement signed in 2001 ("DFS Agreement") (second claim); and (3) a confidentiality agreement signed in 2001 (third claim). Defendant ADS brought a counterclaim against plaintiff for breach of the Supply Agreement. Following a jury trial on the merits, the jury returned a verdict in favor of the plaintiff as to its claim for breach of the Supply Agreement and awarded the plaintiff $130,000 in compensatory damages under that claim. The jury returned a verdict against the plaintiff for its second and third claims, and also returned a verdict against the defendant for its counterclaim.

Currently before the Court are: (1) post-trial motions by the defendant for judgment as a matter of law under Fed. R. Civ. P. 50, and for a new trial under Fed. R.

Civ. P. 59; and (2) post-trial motions by the plaintiff for declaratory and injunctive relief and an award of prejudgment interest.  For the reasons stated, defendant's motions for judgment as a matter of law and for a new trial are denied.  Plaintiff's motion for declaratory and injunctive relief is also denied, but its request for an award of prejudgment interest is granted.

## DISCUSSION

### A. Defendant's Motions

Rule 50(b) of the Federal Rules of Civil Procedure permits the Court to grant judgment as a matter of law where the Court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for a party on a claim.  Judgment as a matter of law should not be granted unless  "(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise [or] conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it]."  *Taylor v. Brentwood Union Free Sch. Dist.*, 143 F.3d 679, 685 (2d Cir. 1998) (internal quotations omitted).

Rule 59(a) of the Federal Rules of Civil Procedure permits the Court to grant a new trial upon motion by a party.  The Second Circuit has explained that the standard for granting a Rule 59(a) motion is less stringent than the standard for a Rule 50 motion "in two significant respects: (1) a new trial under Rule 59(a) may be granted even if there is substantial evidence supporting the jury's verdict, and (2) a trial judge is free to

2

weigh the evidence himself, and need not view it in the light most favorable to the verdict winner." *Manley v. AmBase Corp.*, 337 F.3d 237, 244 -245 (2d Cir. 2003) (internal quotations omitted). Nevertheless, a motion for a new trial under Rule 59(a) ordinarily "should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *See Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.*, 290 F.3d 98, 106 (2d Cir. 2002) (internal quotations marks omitted).

The defendant argues that this Court should grant its motion for judgment as a matter of law or, alternatively, a new trial, because the jury's damage award was contrary to the evidence. First, the defendant argues that the jury's award of $130,000 cannot stand because it is less than the $178,875.00 in damages requested by the plaintiff. According to the defendant, there is no logical explanation as to why the jury awarded that amount and therefore, the award is improper.

The Court rejects the defendant's argument that simply because the jury awarded an amount that was *less* than the amount requested by the plaintiff, the verdict cannot stand. The Court instructed the jury that if the plaintiff established any of its claims, the jury should award the plaintiff an amount of damages that would leave the plaintiff in as good of a position as it would have been had the contract been performed by the defendant. At issue under the Supply Agreement was the amount of royalties owed to the plaintiff as a result of the defendant's breach. The Supply Agreement provided that the defendant could sell certain equipment known as Digital Label Finishing Systems ("DFS units") to plaintiff's competitors, provided that it paid plaintiff a

3

specified royalty for each unit sold and provided that the plaintiff first purchased three DFS units for itself from the defendant.[1] The plaintiff argued that it was entitled to $178,875.00 in damages representing the total amount of royalties due under the Supply Agreement for 127 DFS units that were sold by the defendant. The plaintiff presented evidence to support its claim of $178,875.00 in damages. The defendant argued that the plaintiff was not entitled to *any* damages, or alternatively, that the amount of damages was less than that claimed by the plaintiff. The defendant also argued that the Supply Agreement had ended at some point earlier than the date that the plaintiff was using to calculate its damages. The parties stipulated to joint exhibits indicating the number of DFS units sold by the defendant from the date of the Supply Agreement through May 2008, and the date that each unit was sold. Assuming the jury agreed that the Supply Agreement ended at some point before May 2008, it was entitled to reduce the award of royalties being requested by the plaintiff based upon the date that it found the contract to have been terminated.[2] Contrary to the defendant's suggestion, "[a]bsolute certainty is not required" for a jury award, *Cruz v. Local Union No. 3 of Int'l. Bhd. of Elec. Workers,* 34 F.3d 1148, 1156-57 (2d Cir. 1994), and the verdict will stand where, as here, "a reasonable juror could have utilized the information provided to make a reasonable jury award." *Id. See also Whitney v. Citibank*, *N.A.,*

---

[1] The defendant initially began manufacturing DFS units at plaintiff's request in accordance with the terms of the DFS Agreement, which was the first agreement signed between the parties. It was plaintiff's position that it identified a need in the marketplace for equipment that could do what the DFS units did.

[2] Neither party requested for the jury to specify on the verdict sheet the date that it found the Supply Agreement to have terminated.

4

782 F.2d 1106, 1118 (2d Cir. 1986) ( "Since these inferences are within the range of permissibility and the award . . . is a fair approximation of [the plaintiff's] loss, the award must stand.").

Alternatively, the defendant argues that the jury's award should be reduced by $15,000 representing an amount that the defendant claims it is still owed by the plaintiff. The defendant made this same argument to the jury as part of its counterclaim,[3] but that argument was expressly rejected when the jury found against the defendant on that claim. The Court finds no reason to disturb the jury's rejection of that argument.

Accordingly, the Court denies the defendant's Rule 50 and Rule 59 motions in their entirety.

B.  **Plaintiff's Motion**

    1.  Prejudgment Interest

Plaintiff asks the Court to award prejudgment interest. Under New York Law, plaintiff is entitled to prejudgment interest on its damages for breach of contract. *See* N.Y. Civ. Prac. L. & R. ("CPLR") § 5001(a) ("Interest shall be recovered upon a sum awarded because of a breach of performance of a contract."). The defendant concedes that the plaintiff is entitled to 9% annual interest on whatever judgment is awarded. In terms of the accrual of interest, New York's CPLR § 5001(b) provides

---

[3] The Supply Agreement provided that the defendant's obligation to pay the plaintiff royalties was not triggered until the plaintiff purchased three DFS units at a cost of $15,000 each. The defendant argued that the plaintiff had failed to fulfill its obligation to purchase the three units. Plaintiff presented evidence indicating that it had fulfilled all of its obligations under the Supply Agreement. By rendering a verdict against the defendant on its counterclaim, the jury clearly rejected the defendant's argument.

5

> Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.

*Id.* at § 5001(b). The parties dispute the date upon which interest accrued. Plaintiff argues that the "earliest ascertainable date" is no later than February 19, 2004, when the defendant repudiated its obligations under the Supply Agreement. The defendant argues, correctly, that while some of the damages may have accrued on or before that date, not all of plaintiff's damages accrued on that date. Instead, the damages accrued at various times, each time a DFS unit was sold to plaintiff's competitor but royalties were not paid to the plaintiff. According to joint exhibits 35, 36 and 37, defendant sold 127 DFS units to plaintiff's competitors on various dates from August 27, 2002 to May 23, 2008. Where, as here, damages were incurred on various dates, the Court can exercise its discretion and affix a "single reasonable intermediate date" as the date from which all damages accrued. The Court finds that July 1, 2005, which is the approximate midway point from August 2002 to May 2008, is an appropriate date. *See Gargano v. Diocese of Rockville Centre*, 888 F. Supp. 1274, 1288 (E.D.N.Y. 1995) (fixing the midway point between two dates as the "single reasonable intermediate date" from which prejudgment interest would accrue where damages were incurred at various times between those two dates); *Rose Assocs. v. Lenox Hill Hosp.*, 262 A.D. 68 (1st Dep't 1999) (same). Therefore, plaintiff is entitled to prejudgment interest in the amount of 9% accruing as of July 1, 2005 until entry of judgment. *See* N.Y. Civ. Proc. L. & R. § § 5001 and 5002.

6

### 2. Declaratory and Injunctive Relief

Plaintiff also asks for a "declaration that ADS has no authority to sell the DFS or any modification or application of that without T2's express written permission" and an injunction "prohibiting ADS from selling, transferring or otherwise using the DFS or the technology and information used to create the DFS in any way." See Dkt. 81, at 2. Plaintiff argues that by finding in favor of T2 under the Supply Agreement, the jury necessarily concluded that the Supply Agreement modified the terms of the DFS Agreement.

A key issue a trial was whether the Supply Agreement - which was executed after the DFS Agreement - modified the DFS Agreement or entirely superseded it. The Supply Agreement itself provided:

> This agreement invalidates all prior agreements of between the two companies regarding the DFS.

Seizing upon that language, the defendant argued to the jury that all of the prior terms of the DFS Agreement were invalidated and entirely superseded by the Supply Agreement. This was an important point because the DFS Agreement provided that the equipment manufactured under that DFS Agreement (i.e., the DFS units) was "solely intended exclusively for T2 solutions' [sic] use and [was] not to be sold or marketed to any other customer or competitor of T2 Solutions unless agreed to, in writing, by T2 Solutions." See DFS Agreement, at ¶ 5.

Plaintiff, on the other hand, argued that the Supply Agreement merely modified the DFS Agreement, and did not entirely replace it. If that were the case, all prior terms

7

of the DFS Agreement that were not inconsistent with the Supply Agreement would survive. The Court instructed the jury on that issue as follows:

> Plaintiff's second claim is that the defendants breached the DFS Agreement . . . when it sold and marketed the DFS units to others without the plaintiff's written permission.
>
> Plaintiff claims that under the DFS Agreement, the defendant agreed that the plaintiff was the sole owner of the DFS and that the defendant would not sell or market the DFS to others without the plaintiff's written permission.
>
> The defendant argues that the DFS Agreement was invalidated by the Supply Agreement, and that the Supply Agreement supersedes all promises made in the original DFS Agreement.

The Court went on to explain to the jury that it was for them to decide whether the Supply Agreement was intended to invalidate and supersede all other promises made under the DFS Agreement, or whether the parties intended the Supply Agreement to merely supplement or modify the DFS Agreement. The Court further instructed the jury that the issue turns on what the parties intended, and that intent was to be inferred from the language in the agreements, the parties' actions, and all of the surrounding circumstances. The Court also instructed the jury that if they found that the Supply Agreement was intended to invalidate and supersede the DFS Agreement, then their verdict on plaintiff's claim under the DFS Agreement should be for the defendant.

The jury ultimately ruled against the plaintiff on its claim for breach of the DFS Agreement. In light of that determination, and after hearing all of the evidence presented at trial, it is the Court's view that the jury reasonably concluded that the Supply Agreement entirely superseded the DFS Agreement. The Supply Agreement

did not carry over the exclusivity provision contained in the original DFS Agreement - in fact - it contained contradictory language that gave the defendant the right to use or sell DFS units to plaintiff's competitors as long as a royalty was paid to plaintiff. Because plaintiff did not reserve the right to prevent the defendant from selling DFS units to plaintiff's competitors in the Supply Agreement, the Court finds that an award of injunctive relief would be improper. In essence, the plaintiff is asking this Court to enjoin the defendant from doing something (selling DFS units to plaintiff's competitors) that the Supply Agreement itself did not prohibit. Under the circumstances, the Court declines to award declaratory or injunctive relief to the plaintiff.

The question remains as to whether plaintiff is owed a royalty on any future sales of DFS units by the defendant. The Court finds that the answer to this question must be no. As plaintiff correctly notes, neither party requested that the jury make any determination as to when, if at all, the Supply Agreement terminated. It is the plaintiff's position that the Supply Agreement never terminated, and that it continues to be in effect today. Nevertheless, in awarding an amount of damages that was less than that requested by the plaintiff, the jury must have concluded that the Supply Agreement terminated at some point. In light of that, the Court finds that it would be inconsistent with the jury's verdict to grant the declaratory and injunctive relief requested and therefore declines to do so.

C. **Stipulated Setoff**

The parties stipulated during trial that in the event that the jury awarded plaintiff any amount of damages, that amount would need to be reduced by $4,600.00

9

representing a setoff for the cost of certain goods delivered by the defendant to the plaintiff, for which the plaintiff had not paid.  Accordingly, the Court finds that the plaintiff's $130,000.00 award of damages shall be reduced by $4,600.00 to $125,400.00.

## **CONCLUSION**

For the reasons stated, the defendant's motions for judgment as a matter of law and for a new trial are denied, as is the plaintiff's motion for declaratory and injunctive relief.  The Clerk of the Court shall enter judgment in favor of the plaintiff in the amount of $125,400.00, plus 9% interest accruing from July 1, 2005, until the date judgment is entered.

SO ORDERED.

s/ *Richard J. Arcar*a  
HONORABLE RICHARD J. ARCARA  
CHIEF JUDGE  
UNITED STATES DISTRICT COURT

DATED:  March  31  , 2009